Last case today is Davidsmeyer v. Illinois Department of Children & Family Services. That's case number 417-0246 for the appellant Dwayne Young for the appellee Linda Bochy-Ansah. You may proceed Mr. Young. Thank you and may it please the court, counsel. This matter is on appeal from the circuit court where an administrative review was held of an appeal taken by the plaintiff from an indication by the department that she was indicated for not only negotiating, but also negotiating. There's really three different issues and let me start with the one that just emerged from the appellee's brief where the state confessed that allegation 74 was unlawful and they just withdrew any argument on it. I don't know how this court or any other court could now do a review because allegation 74 is hopelessly entangled with allegation 51. The burdens under each are very disparate. Under 74 it's just simple neglect. Under allegation 51 it's a blatant disregard. And below before the administrative law judge we were arguing in fact that even under allegation 74 that there was some sort of volition required where the indicated actor had to take some action to put a child in some state. Well the court in Cook County had declared it unlawful to proceed under that and even before this indication was ever made. And we attached that order to a copy of the reply brief which is the first we knew about it because it's an unpublished decision. Okay well I should have let you finish. I don't see how that therefore affects their ability to proceed under the other allegations. Yeah maybe when we get to the merits because there the two are completely intertwined and what really the administrative law judge was doing was sitting in review of the plaintiff's parenting decisions and her parenting manner and criticized her for how she allowed this child to roam and things which I don't think is supported by the record but nonetheless it wasn't that there was some blatant disregard as is required under 51. So it just really complicates any review now because they withdraw 51 but if you read the decision of the administrative law judge which was upheld by the circuit court the two are just hopelessly intermingled and tangled together even to the very end of the decision. And so I think I hope that that would augur well for the review of this case on its merits. The second issue is however the procedural due process issue which we raised which by rule and the department acknowledges it was required to issue its decision within 90 days of the date the appeal was received by the department. It did not do so. The administrative law judge made no pretense of saying why she didn't get it done in time. The director made no pretense of saying or any excuse why he didn't act in time. Nonetheless the decision was well after the 90 day period of time. So on the review on the administrative review the department had to justify somehow or another to attribute the delay to the plaintiff herself which ultimately it did by taking the language of the rule saying that first available date and saying that she had to demand the first possible date. She had to demand to go to trial within 14 days of the scheduling order where there was in fact a longer period of time that the 70 day period which came up after the fact. We didn't even know about a 70 day rule. It wasn't disclosed at the scheduling conference but apparently the department has an internally imposed rule that says we're going to have our hearing within 70 days and that allows 20 days to render a decision and issue the decision through the director. It didn't happen. So the effort was made to try to impose upon the plaintiff an obligation to accord her own due process of law by demanding that she have a hearing with the first possible date and that's what the trial judge ended up finding. I acknowledge that of course this panel reviews the decision of the department and not the trial court. Nevertheless it was the trial court that affirmed saying that it was sufficient to shift basically the delay from the first possible date to the first available date. The catechy is very clear on the scheduling date. The admonition that was used, we did waive it because we knew about the 90 day rule. We demanded that we want to stick fast to the 90 day rule and so we waived the reading of any of the admonition but if the admonition had read it would simply state that we have to decide the case within 90 days and if you cause a delay those dates can be charged against you. If a continuance is required. No such thing happened here. The administrative law judge offered no date whatsoever but finally said well in the best of all possible worlds Mr. Young when would you want to schedule this and I said the first two weeks of December which were within the 90 day period and she said okay let's try for it. We suggested December 3rd and 4th which were well within the 90 day period. The department attorney was ready. I was ready and then she announced that she was not available then. There's no suggestion that she was available any day before that date. Nonetheless the department argued and the circuit court found that all dates prior to the dates chosen were attributable to the plaintiff and she is responsible for that delay. Which I just find offensive under any kind of notion of common sense because the administrative law judge had the duty to suggest a date. She never did do that. Well when you say she had the duty is that in the code that she had that duty? The admonitions are not in the code are they? No well the code has simply got to decide it within the 90 days but the admonition they used for the excuse says specifically I will now offer you the first available date. Right but the admonition itself is not in the code nor is it in the statute. That is correct is it not? Correct. That's my understanding yes. But the code is very clear that the matter has to be decided within the 90 days. Not only the administrative law judge's decision but the director's decision also, the final decision. Now had, I mean they used the admonition against the plaintiff but had they used the, had they actually read the admonition, the admonition itself says I will now offer you the first available date. Never happened. We don't know that any of those dates before December the 10th were available to the administrative law judge. What was the first available date offered? She didn't offer one. She never offered. She asked you what you wanted. She asked me and I said the first few weeks of December which were within the time, the department attorney then said I'm available on the 3rd and the 4th. I said so am I. She then said I'm not. He then said 17th and 18th. I said I'm available then but also on the 10th and 11th. And the department attorney said I'm available then too. She says I am too and it was scheduled for the day. Bingo. That's the first available date she offered you, December 10th. I would agree. But to attribute every date before that as being available and therefore chargeable to the plaintiff as a delay just makes no rational sense whatsoever. When you all settled on that date, there was never any discussion about whether or not any dates prior to those dates were available, right? Never, never, nothing. Take me through the analysis instead of December the 10th and 11th. It was February the 10th and 11th were the dates that were thrown out here just like this. Same analysis? Well, I think I would have recognized that, you know, we're beyond the 90-day period. Well, whether you would have or wouldn't have if the same colloquy had occurred among the attorneys and the ALJ. But we're talking about February 10th and February the 11th. Where would we be? Had I suggested a date beyond the 90-day period? Just exactly the way it was here where there was acquiescence. That would certainly complicate things, you know, being past the 90-day period. But as long as we're in the safe harbor within the 90-day period, you know, we had then time to prepare. We had time to conclude and get the matter heard before the time would run. But certainly I think if I suggested that, you know, I wasn't ready to go until February, we'd have a problem. I certainly agree with that. But here, right out of the box, I said, no, we want to stick fast to the 90-day rule, insisting on the plaintiff's rights. They were not accorded to her, and therefore it's our position that her due process rights. What was the date of the 70th day after the pre-hearing? Was it like the December 8th or 9th? Yes, it was the day before. We actually went to trial on the 71st and 72nd day, which still left 18 days for them to make their decision. Well, would you concede, since you agreed to the date of December 10th, which was, we'll say, two days past the 70-day period, that those two days would not be counted in the 90-day calculation? Had we been told that the department is operating under a rule that they have to have a hearing within 70 days, I could agree with that. That never came up until after the fact. We didn't know that the department had its own rule, and that was not part of the scheduling colloquy at all. But even if you say they're chargeable to us, the result is the same, because the decision was not made within 90 days. It was made well after 90 days, not only the administrative law judge's decision on the 6th of January, but the director's decision on the 21st. Suppose we agreed with you that the case was not finalized within 90 days as required by statute in the regulations. Does that necessarily mean there was a due process violation here? Not necessarily, but there are no exceptions here. In the Lyons case, which we rely upon, the administrative law judge was involved in a car accident on the day of the second hearing date. And the court said, that's excusable. We had no such thing in this case. And therefore, there was no reason for any delay in making the decision, and she was entitled to the enforcement of the department rules. I thought the Lyons case said that when the initial indication is made, there's a different burden of proof than when the hearing proceeds to a decision which requires a preponderance. In other words, the initial indication doesn't require a preponderance of the evidence. However, at the subsequent hearing, that is what is required. And therefore, because of those two different burdens of proof, the days were very important in the timeline of whether the actual hearing occurred within 90 days. I agree that Lyons has an element of that, but that was never present in our case. We were always on the second and the higher proof within that 90-day period. There was never an issue about whether the first indication was sufficient. We didn't raise that. We just went right to hearing on the final proof, which required the department to prove their case by preponderance of the evidence, not the initial lesser burden. I'm not sure I follow what you're saying there. You're saying the initial indication required a finding by DCFS of a required preponderance of the evidence? No. And I'm saying in the Lyons case, there was a two-step process. There was an initial indication, which required only a modicum level of some sort of evidence. Right. They need to act to remove a perpetrator from endangering children. The second state the department's in, if a hearing was asked for and an appeal was taken, then the department was required to prove by preponderance of the evidence the allegations of the indication. Well, both those elements are here as well, are they not? We never challenged the initial indication. We went right to it. Well, I'm not trying to trick you. I think it's helpful to your case if that same scenario is present here. But go ahead with your argument. There was never a preliminary determination about the indication. We went right to hearing on the higher level of proof. Right. I understand that. Yeah. Lyons actually has to do with some emergency procedure to move quicker. And that wasn't the case here. So it was a different procedural posture of the matter there. Okay. So in this case, in short, there was no delay. There was no continuance. There was no claim by the department of any excusable delay. The ALJ didn't suggest that she was late for any excusable reason. The director didn't either. And all this rationale of how to shift back to the plaintiff, the burden of providing her own due process of law, came after the fact and before the trial court. And, again, I think it's just a very plain confusion of first possible date. First available date is not first possible date. And, therefore, that 31 days is not chargeable to my client. And we suggest that there's just no basis to say so. On the merits. I think this investigation, if a fair reading of the record, is that this investigation is a bit of a train wreck. First of all, you know, looking back now and, you know, we're complaining that, really, the department is trying to sort of imperiously overview the plaintiff's mothering instincts, whatever, as opposed to the requirement for the death by neglect is blatant disregard. In this case, there was no such blatant disregard. In this case, suddenly the hotline report of saying the child was missing for 30 days, 30 minutes, becomes mother was unaware of, wasn't even concerned about her child for a 30-minute period. That wasn't the case at all. Her first utterance to the officer, the first responder, was, I lost sight of her for just a moment. As if you recall, and the testimony was, is that they had been out on a family outing, walking through the neighborhood. They gathered some mushrooms. Mrs. Davidsmeyer had then taken the mushrooms out on the back porch to take some photographs of it, leaving Coral, her daughter, 3-year-old daughter, in the house for just a few minutes while she took the pictures. She was between the pool and the exit from the home, which was the only access that the child could have had. Then when she went back inside, she called out for the child. She searched the three-story house from top to bottom. Then, using her motherly instincts, said, well, she must have gone next door to where the neighbors are because they had this relationship with another neighbor. Yes, our kids can come back and forth and play with each other. So, even unconcerned yet, she walks down to the neighbors and finds out that Coral is not there. Then she enlists all of them, and they ran back to the house. They looked in the car. They searched the house again and then ended up finding Coral in the pool in the backyard. Nobody knows how and when Coral ever got to the pool, what happened back there.  What we really have is just a moment when she lost track of her child. Then, using her own motherly instincts and knowledge of her own child and the habits of her child, searched into places where she would expect her child to be because the child knew better than to get into the pool. There's no suggestion that she even knew that the pool wasn't secured like it should have been. It's her mother's own pool. She was just staying with her mother at the house there. But she followed what she believed was where she would find her daughter. First, searching the house. Maybe she's playing hide-and-seek, whatever. After that, exiting the door, walking down to the neighbors, hoping to find her there. Didn't. Then the panic set in. They came back, searched the car, searched the house again, and lastly, looking at the pool, which was the last place she expected to find her daughter. So it's our position that regardless of what standards you apply, the way that the investigator, the child protective investigator in this situation, he spent a few minutes with her, 15 minutes or so of the night when she was distraught. He just left her deceased child at the hospital. The only time he ever made any inquiry of her. The hotline report contained misinformation about a previous hospitalization psychiatrically, which never happened. The whole thing is just a train wreck from the very beginning. Under this situation, we submit that under any reasonable standard of proof, that the findings of the administrative law judge can't possibly stand and we've asked that this court reverse, first on procedural grounds, and secondly on the merits also. All that, I don't know how you review this record in view of the finding, which has suddenly disappeared and withdrawn by the department as if that solves everything. It doesn't. If you read the decision of the administrative law judge, I think it's pretty clear that she confused and intermixed the two and her ideas of neglect being maybe a little bit more aggressive, apparent than the administrative law judge thought she should be, found itself into the decision to find her culpable for her child's death and therefore on the 50-year registry. We'd ask that you reverse. Thank you. Mr. Young, thank you. You'll have rebuttal. May it please the court, counsel. I am Assistant Attorney General Linda Boachianza on behalf of the department and its director. The central issue in this case is whether the department clearly erred in declining to expunge the indicated finding for death by neglect, where David's Meyer's daughter drowned because she left her unsupervised for a period of roughly 30 minutes, knowing that the child was anxious to swim and that there was a backyard pool with unrestricted access. For the reasons explained in our brief, the department's decision was not clearly erroneous. On appeal, David's Meyer attempts to shift focus away from this central issue by claiming that her procedural due process rights were violated and that the department's investigation somehow was inadequate. Neither of those claims has merit. The due process clause protects fundamental justice and fairness. Procedural due process in particular requires that a party be given a meaningful opportunity to be heard at a meaningful time. That happened in this case. David's Meyer herself asked that the hearing be conducted in the first few weeks of December 2015, and it was conducted beginning on December 10th. The final administrative decision was then issued in January of 2016. There's nothing about this time frame that's unreasonable and certainly not violating a due process. Both the Supreme Court's decision in Lyon and the department's regulations contemplate that the 90-day period within which the department should render its decision may be extended. Plus, as the court in Lyon recognized, due process is a matter of federal constitutional law. So even assuming for argument's sake that the department didn't comply with state requirements regarding timing, that's not necessarily determinative of whether due process was violated. On page 5 of her reply brief, David's Meyer contends that the timing of the issuing of the final administrative decision, as well as the administrative hearing itself, cast a serious pall on the proceedings. But she doesn't explain how. David's Meyer doesn't suggest that any of her witnesses were unavailable based on the timing of the hearing or that any evidence turned up missing because the hearing wasn't conducted sooner. Even putting to the side her own role in choosing the hearing date, David's Meyer had the opportunity to present four witnesses at the hearing, and she engaged in cross-examination of the department's witnesses. She had a meaningful opportunity to be heard at a meaningful time, and thus she received due process. David's Meyer's challenges to the department's factual findings, and in particular the finding that she left her child unsupervised for 30 minutes, also fail. The department's investigator testified that on the night of the incident, David's Meyer told him that she had not seen Coral for about 30 minutes and at that point went to look for her. At the hearing, David's Meyer denied having made this statement. So given the conflicting testimony, it was left to the department to make a credibility determination, and the department determined that the investigator's testimony was more credible. That determination was not against the manifest way to the evidence. With regard to allegation number 74, the department has not confessed error. Confession of error occurs when the lower court makes a decision that is adversarial to one party's rights and that benefits another party's rights. That is not what happened in this case. Neither the department nor the circuit court erred in declining to expunge the indicated finding for inadequate supervision. There is no published decision that's invalidated allegation 74, and the circuit court decision that David's Meyer attached to her reply brief has no precedential value. The department wanted to be forthcoming about the fact that this challenge does exist to allegation 74, but under 89 Illinois Administrative Code section 431.30b1, all reports where the allegation involves a child's death shall be retained for 50 years on the register after the report was indicated. So it's the indicated finding for death by neglect that caused her to be placed on the register for 50 years. We wanted to remove any sort of doubt or question about the propriety of her placement on the register, and that's what made us decide to withdraw any claim regarding allegation 74. But even without allegation 74, David's Meyer's situation would remain the same. Returning to the procedural due process argument, this is not a situation where David's Meyer requested a hearing and was put off for several months by the ALJ or the department. David's Meyer asked for a hearing in the first few weeks of December, and she got a hearing in the first few weeks of December. 89 Illinois Administrative Code section 336.110a2 provides that the administrative hearing must be scheduled within 70 calendar days after receipt of the appellant's request, unless the parties agree otherwise. And if the appellant doesn't agree to hold a hearing on the ALJ's first available date, that time between the first available date and the date the hearing starts doesn't count against the 90-day period. Okay, counsel, I'll ask you the same question I asked Mr. Young. What was the first available date offered by the hearing officer? We don't know the first available date. Why isn't it December 10th? Well, it's not clear that it is December 10th. It's possible. I don't know any other way to read the transcript if it's not December 10th. The ALJ didn't offer her first available date. Sure she did. That's how it got scheduled on December 10th, because it was offered as a date. It was offered as a date within the time frame that David's Meyer proposed, which is the first few weeks of December. We don't know that she wasn't available prior to that. But when she asked David's Meyer what time frame he would like to propose, he said first few weeks of December. And so within that period, she offered a date. But it's not clear that she was unavailable to conduct the hearing before then. And given that David's Meyer … Why would David's Meyer have to have the burden of showing whether there was a date available before then when the admonitions that she did not read clearly say that she's supposed to offer a first available date? The admonition was not read because David's Meyer said that she did not need an admonition, that she didn't need a reminder about the timing of the hearing provisions. So by not reading the admonition, that relieved the ALJ from offering the first available date that she was available for a hearing? The ALJ wanted to schedule a hearing day, or the ALJ chose to ask for David's Meyer's preference as to the scheduling of the hearing. And David's Meyer proposed first few weeks of December. And so based on that, based on David's Meyer's choice, based on her offering of that time period, the ALJ scheduled a hearing within the time frame that David's Meyer proposed. I understand that, but that leads me to understand or believe that the first date, in fact, the only date that she indicated she was available, that was agreed upon, was the December 10th date. I understand Your Honor's view, but even putting to the side, even if that were so, again, the point of these timing requirements is to ensure that the appellant gets a fair hearing, a fair and timely hearing. And she got that in this case. And returning to Lyon, again, you know, even if, let's say the department, even for argument's sake, saying the department didn't comply with that 90-day period, that doesn't suggest that due process was violated. Why not? Doesn't Lyon say that the department could cure its problem with the 90 days by having the same burden of proof all the way through? Doesn't the Supreme Court recommend that? Either use the preponderance of the evidence all the way through the process or the other standard? Isn't that what it said? And in fact, didn't the dissent criticize it because they said it's advisory opinion? The dissent criticized it saying that the credible evidence standard was set forth by statute. And so because of separation of powers concerns, the dissent thought it was inappropriate for the court to suggest what, you know, given that the General Assembly had said credible evidence is fine, that it was inappropriate for the court to suggest otherwise. But the Lyon case is distinguishable in that in Lyon, the entire appeals process before the department took roughly eight months. Here, it took fewer than four months for, you know, the appeals process to be completed. Also in Lyon, the court noted that some flexibility is appropriate with regard to the scheduling of the administrative hearing and the issuing of the final administrative decision. And in this case, given that plaintiff was given a hearing within the timeframe that she proposed, and by statute the department is required to issue a final administrative decision 60 days after the hearing, in this case the decision was issued 41 days after the hearing, there's just no due process concern here, given what occurred in this case. Well, that confuses me. I thought it had to be done for 90 days. So the 90-day period is set forth in the regulation. And the statute says that the perpetrator has to receive a timely hearing before the department. Then the regulation says that within 90 days this process should occur unless extended by, you know, actions of the appellant and otherwise. So even to the extent that, and our view is that there were actions by the appellant that extended the 90-day period, but even if this court sees it differently, her due process rights, based on the statute, the department has to issue its final administrative decision within 60 days after the close of the hearing, and it did within 41 days. So we just don't see how there is a due process concern in this case. She received a timely hearing within the department, and the recommended decision and final administrative decision were issued shortly thereafter. David's Meyer also suggests at various points that the ALJ should have rushed to issue the final administrative decision, despite the fact that the two-day administrative hearing at which several witnesses testified ended on December 11th, that somehow she should have rushed to issue a decision by December 29th. But it wouldn't have been in David's Meyer's best interest for the ALJ to rush through a decision. There was a lot of testimony presented at the hearing, and it was appropriate for the ALJ to issue a decision that carefully analyzed the evidence that was presented, which is what is demonstrated in this case. Turning to the merits of the investigation, there's simply no support for David's Meyer's claim that the department had predetermined she should be indicated. The investigator testified that on the night of the incident, David's Meyer told him that she had not seen Coral for roughly 30 minutes, and at that point started to look for her. At the hearing, when the import of that admission became clear, David's Meyer said that it had only been about a 5-10 minute period, but the department, in its role as fact finder, concluded that the investigator's testimony was more credible. Allegation 51 requires a showing of blatant disregard of parental responsibilities, which results in a child's death. Here, we had a 3-year-old who, based on David's Meyer's own testimony, was anxious to go swimming. We also had a pool in the backyard that was unsecured, which we know because David's Meyer testified at page 119 of volume 4 of the record, that the safety device was not in place that day. So knowing in her own words that Coral was fussing at her about wanting to go swimming, David's Meyer left her and went outside to take pictures of mushrooms. When she called for Coral and got no response, she went through the home, which is described in the record as a large three-story building with a basement. Then, after not finding her in the home, David's Meyer thought that the child must have gone by herself to the neighbor's house, even though the neighbor's house was about four houses away, and she said that it was her common practice to do so. Ultimately, David's Meyer left Coral unsupervised for a roughly 30-minute period, during which time the child partially disrobed, entered into the pool, and ultimately drowned. That sequence of events demonstrates blatant disregard of parental responsibilities. This is a tragic situation, but ANCRA requires the department to indicate people who have committed blatant disregard of parental responsibilities. A fair reading of the entire record in this case demonstrates that the department did not clearly err in declining to expunge the indicated finding for death by neglect. The 30-minute time period seems extremely important to both sides of the case, would you agree? As to whether she started looking 30 minutes after the child was missing, or whether once she noticed the child was missing, it took 30 minutes to find her, unfortunately, in the pool. That's really what's critical here, isn't it? I don't know that, certainly it is important, but I don't know that that's the only factor that should be considered, and we should note that, of course, the department's fact findings are reviewed against their manifest way to the evidence, and the department found that it was a 30-minute period before she started to look for her. Well, what if it had been five minutes before she started to look for her? Would that change the outcome here? It might. I mean, the department looks at these cases with regard to the totality of the circumstances. Wouldn't you admit that it likely would change the outcome? That's certainly possible, Your Honor. But here's the problem. The ALJ made this statement. Whatever the actual time frame, she's talking about those 30 minutes, the young girl was missing and unsupervised long enough for her to go to the pool, climb the ladder, and then fall or climb in. Yes. Well, that sounds like that that occurrence could have happened in two or three minutes, five minutes, six, seven minutes. The statement, whatever the actual time frame, seems to be damaging the position the DCFS is taking. Am I reading too much into that statement from the hearing officer? I think you may be, Your Honor, because if you look at it, the hearing officer described all of the factual circumstances, which, again, include the fact that the child was anxious to go swimming. The backyard pool was unsecured. David's Meyer went into the home to go charge her phone. David's Meyer then went back outside to take pictures of the mushrooms. You know, so given all of that, I think all of those factors are certainly what played into the factual finding in this case. And given that factual circumstance, you know, the decision that, or, again, the decision not to expunge that indicated finding for death by neglect was not clear error. Unless this Court has additional questions, we would ask you to affirm. Thank you. I see no questions. Is there any rebuttal? Several quick points. I agree that the 30 minutes is critical, and I'd ask that you just give the record a fair reading with respect to that. Even the child protective investigator acknowledged, you know, we don't know what kind of time frame is really important here. Fifteen minutes didn't concern him. The fact that she could be running around in the house didn't concern him and related things. But I think the first utterance out of this plaintiff's mouth when the officer Rosario showed up is, I just lost sight of her for a minute, for a moment, I guess, was the exact word. Secondly, the safety device, yes, she acknowledged that it wasn't on there, but there's no evidence that she knew that it wasn't secure beforehand. Thirdly, I'm not sure what confess error really means in this context, but it's clear that the department had a court tell them that Allegation 74 was unlawful before they ever initiated this, and then when it came up on appeal, they withdrew any reliance upon Allegation 74. And it just, I don't know what words you're going to use, but it seems to me that the department has, in fact, confessed serious error by saying, you know, look, let's just try to ignore Allegation 74 here. My fourth and last point is, if you read the federal cases upon which Lyons was decided afterward, there's a series of cases in which the department was taking a spanking from the federal government along due process lines because of the way they were handling these things and delaying this whole procedure. In the Depute case, one of the final ones, the court indicated that, look, you ought to decide these cases in 35 days, but we'll put up with your 90-day rule that you've now put up, provided if you start messing with it, we're going to impose a self-executing sanction to not allow it. And that's what we're asking this court to do here. Thank you. Okay, thanks to both of you. The case is submitted and the court stands in recess until further call.